**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KEVIN KING,

    *Plaintiff*,

v.

TERRY SANDERS;

    *Defendant*.

                                /

CASE NO. 13-CV-12816

DISTRICT JUDGE PATRICK J. DUGGAN
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON
DEFENDANT TERRY SANDERS'
MOTION FOR SUMMARY JUDGMENT**
(Doc. 4)

**I.  RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion for summary judgment be **DENIED**.

**II.  REPORT**

    **A.  Introduction**

Plaintiff Kevin King filed this *pro se* prisoner civil rights action, which is brought pursuant to 42 U.S.C. § 1983, on June 27, 2013. Plaintiff alleges that Defendant Terry Sanders, a corrections officer employed by the Michigan Department of Corrections ("MDOC"), retaliated against him in violation of the First Amendment. All pretrial matters were referred to the undersigned magistrate judge. (Doc. 5.) Before the Court is Defendant Sanders' motion for summary judgment, to which Plaintiff has responded in opposition. (Doc. 7.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), the motion is ready for report and recommendation without oral argument.

### B. Factual Background

Plaintiff alleges that on February 4, 2013, a prisoner by the name of Warinner sought Plaintiff's assistance in filing a grievance against Defendant Terry Sanders. (Compl., Doc. 1 ¶ 1.) On February 24, 2013, Plaintiff had another conversation with Warinner about the grievances. (Pl.'s Aff., Doc. 7, Ex. E ¶ 4.) Plaintiff asserts that within an hour of that conversation, Defendant Sanders entered Plaintiff's cell and removed his radio, while "making verbal threats of continuing to shake down Plaintiff and taking property every time" because "Plaintiff should not have helped prisoner Warinner file a grievance against him." (Compl. ¶ 2.)

The radio removed by Defendant Sanders had been the subject of a court-ordered stipulation in a previous class action lawsuit, and Plaintiff "explained to Defendant Sanders there was a Court Order in the back of the radio and when he was done searching the property please return the item." (*Id.* ¶ 4.) Plaintiff alleges that Defendant Sanders responded that he did not care about a court order and he was taking Plaintiff's property. (*Id.*) Defendant Sanders wrote a contraband removal record under the name of Plaintiff's cellmate, indicating that the radio was found on the cellmate's side of the cell and was contraband. (*Id.*; Contra. Removal Record, Doc. 7 at Ex. C.) Plaintiff contends that all of his and his cellmate's property was "collectively on one side of the cell for cleaning purposes" and alleges that "Defendant Sanders tried to use prison rules as a backdoor means of punishing Plaintiff for his protected conduct." (Compl. ¶ 5.) Later that day, Plaintiff filed a grievance regarding the removal of the radio. (*Id.* ¶ 6.)

The following day, Plaintiff's cellmate was called to a hearing on the removal of the "contraband" radio. Plaintiff claims that Defendant Sanders attended the hearing and argued for the destruction of the radio. (*Id.* ¶ 7.) The hearing officer found that the radio was contraband. (*See*

Doc. 4 at Pg ID 40.) Plaintiff alleges that after the hearing, "Defendant Sanders boisterously announced to Plaintiff that the radio is gone and Plaintiff has more property to be taken." (Compl. ¶ 8.) Plaintiff also alleges that Defendant Sanders apologized to Plaintiff's cellmate "and indicated that none of his actions were directed toward him, but to teach King a lesson." (*Id.*) Plaintiff filed a grievance and began writing letters of complaint to the warden, deputy warden, and the assistant attorney general who had agreed to the stipulation in the class-action lawsuit. (*Id.* ¶ 9.)

Plaintiff states that on March 19, 2013, his radio was "returned by Administrative Order" and was "declared lawfully acquired, not altered and not contraband." (*Id.* ¶ 10.) Plaintiff alleges that in mid-April Defendant Sanders "announced to Plaintiff that he was a 'smart ass' and would not elude guilt on misconducts issued by him" and that "Plaintiff should never have gotten his radio back." (*Id.* ¶ 11.)

Plaintiff alleges that Defendant Sanders retaliated against him in violation of the First Amendment. He seeks punitive and compensatory damages, injunctive relief, and an award of fees and costs. (*Id.* ¶¶ 18-19.)

### C. Standard of Review

A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479

(6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

4

### D. Analysis & Conclusion

#### 1. First Amendment Retaliation Claim

A First Amendment retaliation claim consists of the following elements: (1) the plaintiff was engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, i.e., the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc); *Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 217 (6th Cir. 2011). The filing of a non-frivolous grievance constitutes protected conduct so as to meet the first element. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007).

Defendant Sanders asserts that Plaintiff has failed to establish the first element of a retaliation claim – that he was engaged in protected conduct – because in this case Plaintiff was not filing his own grievance, but was assisting another prisoner with a grievance. (Def.'s Mot., Doc. 4 at Pg ID 21.) Counsel for Defendant acknowledges that the Sixth Circuit has held that a "'jailhouse lawyer's' right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts," *Thaddeus-X*, 175 F.3d at 395, and therefore counsel asserts that, "[a]t the very least, Plaintiff must come forward with an affidavit from prisoner Warinner . . . stating that prisoner Warinner required Plaintiff's assistance to file a grievance." (Doc. 4 at Pg ID 22.)

Plaintiff responds that a "jailhouse lawyer's legal services is constitutionally protected when non-frivolous legal claims would otherwise be frustrated or impeded," citing *Lewis v. Casey*, 518 U.S. 343, 356-57 (1996), and provides an affidavit from prisoner Warinner. (Doc. 7 at Pg ID 59.) Warinner avers that he has "a complete inability to access the courts effectively without Kevin

5

King's assistance" and that he had "no other alternative besides assistance from Kevin King. . . ." (Warinner Aff., Doc. 7, Ex. A., Pg ID 65.) Accordingly, with regard to the first element of Plaintiff's retaliation claim, I suggest that Plaintiff has met his burden of responding to the summary judgment motion by placing evidence in the record to establish that Plaintiff engaged in protected conduct.

With regard to the second element, Defendant argues that Plaintiff cannot show that an adverse action was taken against him because his radio was ultimately returned. (Doc. 4 at Pg ID 22.) In response, Plaintiff cites *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002), where the court held that "[w]hether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact" which "in most cases" will "not be amenable to resolution as a matter of law . . . ." *Id.* at 603. Indeed, in *Bell*, the court noted that many circuits have held that confiscating an inmate's property "constitutes sufficient injury to support a First Amendment retaliation claim." *Id.* at 604. Defendant has not pointed to any case law holding that so long as the confiscated property is ultimately returned, the act of original confiscation cannot be considered adverse. Furthermore, in *Bell*, the court stated that to survive a motion for summary judgment on a retaliation claim, a plaintiff must present sufficient evidence

> to demonstrate that the claimed retaliatory acts were not merely *de minimis* acts of harassment. This is all that is required to reach a jury on the issue of whether the retaliatory actions could deter a person of ordinary firmness from engaging in protected conduct.

*Bell*, 308 F.3d at 606-07. Accordingly, I suggest that the acts allegedly taken by Defendant in this case were not "merely *de minimis*" and therefore that Defendant is not entitled to summary judgment on the grounds that Plaintiff failed to show that an adverse action was taken against him.

6

Finally, with regard to the third element, Defendant asserts that Plaintiff cannot establish causation because he would have taken the same action regardless of Plaintiff's alleged protected conduct since the "radio was altered and it was in another prisoner's area of control." (Doc. 4 at Pg ID 24.)

Plaintiff counters by pointing first to the timing of the confiscation of the radio, which Plaintiff reports occurred within an hour after Warinner's Step II grievance was filed with Plaintiff's assistance. (Doc. 7 at Pg ID 61.) Plaintiff has supplied an affidavit from inmate Warinner that corroborates this assertion. (Doc. 7 at Ex. A.) Plaintiff also has provided three affidavits from other inmates who aver that they heard Defendant Sanders state something to the effect that he didn't care whether Plaintiff had a court order allowing him to possess the radio, he would shake down his cell and take something every time and that Plaintiff shouldn't have helped Warinner. (Stetten Aff., Marburry Aff., Doc. 7 at Ex. B; Simson Aff., Doc. 7 at Ex. D.) Plaintiff has also provided an affidavit from his cellmate, Thomas Shulick, stating that after the contraband removal hearing, Defendant Sanders "apologized to me indicating that none of his actions were directed toward me, but to teach King a lesson." (Shulick Aff., Doc. 7 at Ex. C.)

In response to Defendant's argument that he would have taken King's radio even if King hadn't assisted another prisoner in filing a grievance against him because the radio was on Shulick's side of the cell and was altered, Plaintiff has provided the affidavit of Shulick who states that "King's property, or my property, were commonly on one side of the cell for cleaning purposes" and that "these actions are common and never present an issue." (*Id.*) Plaintiff also has countered the claim of the radio being confiscated because it was "altered" by providing a 2005 Michigan Court of Claims document entitled "Stipulation on Monitor Complaint #614" from the

7

past class action suit in state court referred to by Plaintiff. The stipulation, which was signed by representatives of both the MDOC and Prison Legal Services of Michigan, states that the MDOC shall

> inspect Mr. King's personal radio for the purpose of identifying any defects, broken components, or other "changes from its original condition" all of which shall be noted in Mr. King's property file as the baseline condition of the radio from the date of this inspection going forward. Such conditions as noted and described by the Inspector shall not constitute "altered" personal property under [MDOC Policy Directives.]

(Stipulation, Doc. 7 at Ex. E Pg ID 83.) Plaintiff avers in his affidavit that he kept a copy of this stipulation in the back of the radio at all times as a precaution. (Pl.'s Aff., Doc. 7 at Ex. E.)

Upon reviewing the documents, it is clear that Plaintiff in this case has done more than simply allege retaliation: in his verified complaint and in additional affidavits, he has put forward a specific, nonconclusory allegation and identified affirmative evidence that could support a jury verdict at trial. His allegation has essentially been met with a summary denial. Accordingly, I suggest that Plaintiff has made a sufficient showing on each element of a First Amendment retaliation claim to survive Defendant's motion for summary judgment.

### 2. Qualified Immunity

The defense of qualified immunity provides that government officials acting within their discretion are generally shielded from liability for civil damages as long as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). To determine whether a defendant is entitled to qualified immunity, a court considers: (1) whether the allegations rise to the level of a constitutional violation; and (2) whether the right allegedly violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [she] is doing violates that right.'" *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).

I suggest that Defendant Sanders is not entitled to the defense of qualified immunity because, with regard to the first consideration, Plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate a disputed issue of material fact regarding whether Defendant retaliated against Plaintiff in violation of the First Amendment by shaking down his cell and confiscating his radio. With regard to the second consideration, the right to not be subjected to harassing cell searches and confiscation of property in retaliation for engaging in protected activity has long been clearly established. *See Bell*, 308 F.3d at 604.

### E. Conclusion

I suggest that Defendant's motion for summary judgment be denied because there is a genuine issue of material fact in dispute and the evidence is not "so one-sided" that Defendant "must prevail as a matter of law," *Booker*, 879 F.2d at 1310.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further

9

right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

                                                s/ *Charles E. Binder*
                                        CHARLES E. BINDER
Dated: March 3, 2014                United States Magistrate Judge

## CERTIFICATION

    I hereby certify that this Notice was electronically filed this date, served on all counsel of record through the Court's CM/ECF system, and served by first class mail on Kevin King, #171671, G. Robert Cotton Correctional Facility, 3500 N. Elm Rd., Jackson, MI, 49201.

Date: March 3, 2014                 By    s/*Jean L. Broucek*
                                                Case Manager to Magistrate Judge Binder